FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 17 2023

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

IN UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

PETE EDWARDS, on behalf of himself and
all others similarly situated                                              PLAINTIFFS

vs.                          CASE NO. 4:23-cv-39-DPM

CITY OF LITTLE ROCK                                                        DEFENDANT

## CLASS-ACTION COMPLAINT

COMES NOW, Plaintiff, **PETE EDWARDS**, on behalf of himself and all others similarly situated, by and through counsel, **SUTTER & GILLHAM, P.L.L.C.**; and, for this Complaint states and alleges as follows:

### PARTIES AND JURISDICTION

1.  This is an action under Title II of the Americans With Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973. This is an action, in part, for injunctive relief. Thus, this Court has subject matter jurisdiction. Furthermore, Plaintiff is a resident of the state of Arkansas, and Defendant is a municipality located in Pulaski County, Arkansas. Accordingly, this Court has jurisdiction over the Parties and subject matter. Furthermore, venue is proper.

### CLASS ALLEGATIONS

2.  Plaintiff is an individual with a disability, as that term is defined by the Americans With Disabilities Act and state law. This action is a Class Action brought on behalf of all individuals with disabilities who require the use of a wheelchair. At this time, Plaintiff is unsure of the number of members of the Class, but, upon information and belief, alleges that the members of the Class are too numerous to be joined individually.

3.  Plaintiff's claims are typical of the Class, since Plaintiff's claims arise from his status as a person with a disability.

This case assigned to District Judge Marshall
and to Magistrate Judge Volpe

4. Attached as Exhibit A is the Consent Order entered in case number 4:95-cv-00302.

5. Exhibit A required the City of Little Rock to complete the transition plan and ensure accessibility in compliance with the ADA.

6. To date, the City of Little Rock has failed to complete their transition plan such that they have breached the class settlement agreement.

7. The Class continues to be harmed by the intentional conduct of the City of Little Rock in refusing to ensure accessibility to the City for the disabled community.

8. The City of Little Rock's refusal to complete the agreed upon and Court ordered transition is intentional.

9. The Coates Decree establishes that the City of Little Rock was inaccessible.

## COUNT I -- Existing Structures, Policies, and Procedures

10. The Defendants receive federal funds for a part of their programs and projects.

11. As a recipient of federal funds, Section 504 of the Rehabilitation Act of 1973 required Defendants to undergo a rigorous self-evaluation of those facilities, services, policies, and practices which receive or directly benefit from federal funds in an attempt to eliminate both architectural and non-architectural barriers thereby providing disabled citizens equal access.

12. In connection with its Section 504 self-evaluation, the Defendants failed to:

(i) Evaluate, with the assistance of interested persons, including disabled persons or organizations representing handicapped persons, its current policies and practices and the effects thereof;
(ii) Modify, after consultation with interested persons, including disabled person or organizations representing handicapped person, and policies and practices that do not meet the requirements of 45 C.F.R. part 84; and
(iii) Take, after consultation with interested persons, including disabled persons or organizations representing disabled persons, appropriate remedial steps to eliminate the effects of any discrimination that resulted from adherence to these policies and practices.

13. Although Section 504 did not require a self-evaluation of those facilities, services, policies, and practices administered by the Defendants which did not receive federal funds, Title II of the Americans With Disabilities Act of 1990, 42 U.S.C. at 12101 et seq., and Regulations promulgated thereunder at 28 C.F.R. part 35 requires the Defendants to conduct a self-evaluation of all facilities, services, policies, and practices except those which were <u>properly</u> evaluated under Section 504.

14. The self-evaluation serves as a tool for public entities to identify those barriers in its facilities, services, policies, and practices which discriminate against disabled individuals without affirmative action by those disabled individuals affected.

15. The value of a self-evaluation is greatly diminished by the lack of participation by interested persons and defeats the spirit of the ADA and Section 504.

16. In an attempt to comply with the ADA, the Defendants may have "adopted" the self-evaluation of those facilities, services, policies, and practices receiving federal funds which was fruitless because such self-evaluations rendered many compliance issues.

17. As the Defendants did not properly evaluate its facilities, services, policies, and practices under Section 504, it was required to evaluate <u>all</u> of its programs under 25 C.F.R. § 35.107.

18. In a further attempt to comply with the ADA, the Defendants may have contacted persons with disabilities and requested these persons to survey its buildings and other structures for architectural barriers.

19. But no person properly evaluated services, policies, practices, or other non-architectural barriers as required by 28 C.F.R. § 35.105.

3

20.     In any event, in the self-evaluation required by C.F.R. § 35.105 the Defendants failed to:

A.     Evaluate its current services, policies, and practices and the effects thereof, that do not or may not meet the requirements of this part and, to the extent modification of any such services, policies, and practices is required, failed to proceed to make the necessary modifications.

B.     Provide an opportunity to interested persons, including individuals with disabilities or organizations representing individuals with disabilities, to participate in the self-evaluation process by submitting comments.

C.     Maintain on file and make available for public inspection:
(1)    A list of the interested persons consulted;
(2)    A description of areas examined and any problems identified; and
(3)    A description of any modifications made.

21.     Further, the Defendants have failed to adopt and publish a formal grievance procedure for Title II ADA and Section 504 complaints as required by 28 C.F.R. § 35.107 and 45 C.F.R. § 84.7.

22.     Rather, the Defendants have relied upon individual complaints which are handled in an informal, dilatory, arbitrary and possibly capricious manner.

23.     In any event, many of the Defendants' structures required structural changes to achieve program accessibility.

24.     As structural changes were required, the Defendants were required to develop a transition plan under 28 C.F.R. § 35.150(d)(1).

25.     Although all structural changes were required to be completed by January 26, 1995 by C.F.R. § 35.150(c), all changes required under federal law were not completed by January 26, 1995.

26.     In accordance with C.F.R. § 35.150(d)(1), the Defendants have failed:

4

to develop, within six months of January 26, 1992, a transition plan setting forth the steps necessary to complete such changes, including:

    (i)    an identification of the physical obstacles in the public entity's facilities that limit the accessibility of its programs or activities to individuals with disabilities;
    (ii)    a detailed description of the methods that will be used to make the facilities accessible;
    (iii)    a schedule for taking the steps necessary to achieve compliance with this section and, if the time period of the transition plan is longer than one year, identify steps that will be taken during each year of the transition period; and

(2) to provide an opportunity to interested person, including individuals with disabilities or organizations representing individuals with disabilities, to participate in the development of the transition plan by submitting comments.

27.    The Defendants have failed to develop a schedule for providing curb ramps or other sloped areas where pedestrian walks cross curbs, giving priority to walkways serving entities covered by the Act, including State and local government offices and facilities, transportation, places of public accommodation, and employers, followed by walkways serving other areas as required by 28 C.F.R. § 35.150(d)(2).

28.    Many city, state, and federal agencies are located throughout the downtown areas of the defendant cities.

29.    The Defendants have not designated on-street parking for the disabled, nor have they provided accessible parking meters. Additionally, many sidewalks do comply with the slope requirement nor do the curb cuts.

30.    The Defendants' failures as recited above require Plaintiffs and other class members to park some distance away from those agencies and public accommodations they seek to visit.

31.    This necessarily requires Plaintiffs and other class members to negotiate intersections.

32. The lack of a schedule required by 28 C.F.R. § 35.150(d)(2) has produced curb ramps which are virtually useless because some intersections have three or less curb ramps.

33. In those areas where the Defendants installed curb ramps, many of the curb ramps are either not in compliance, or the Defendants have failed to maintain the curb ramps.

34. When confronted with inaccessible curbs, Plaintiffs and other class members with mobility disabilities are forced to "jaywalk" or enter oncoming traffic. When confronted with curbs without compliant visual and textural signs, visually impaired Plaintiffs enter oncoming traffic without warning.

33. This unnecessarily creates a risk of Plaintiffs or other class members being hit by traffic, as has happened to some.

34. Despite requests for funding to conduct a proper self-evaluation, to develop a transition plan, to develop a curb ramp schedule, and to establish a grievance procedure, the Defendants have failed to <u>expressly</u> appropriate any significant amount of money to meet its obligations under the ADA.

35. Instead, the Defendants rely on vague promises to comply. Persons with disabilities deserve equal access today, as mandated by the ADA.

36. Years after the deadline set by federal law, the Defendants have failed to comply with the ADA.

37. Upon information and belief, Plaintiffs allege that Defendants have failed to address the complaints of persons with disabilities.

38. Given the fact that the Defendants are years late in even developing a proper transition plan much less complying with one, further given that the Defendants may have failed

in the past to respond timely and favorably to many citizens' complaints, it is unlikely the Defendants will comply with the ADA unless this lawsuit is brought.

39. In any case, the value promises are not enforceable against the Defendants and fall far short of the requirements of the ADA.

40. Plaintiffs or other disabled individuals of Arkansas should not be forced to bear the burden informing the Defendants of their many transgressions.

41. Further, the Defendants have an ongoing responsibility to evaluate new programs, projects, services, policies, and practices and re-evaluate any changes in faculties, services, policies, and practices in order to assure equal access to class members.

42. The Defendants have failed to ensure that interested persons can obtain information as to the existence and location of accessible services, activities, and facilities as required by 28 C.F.R. § 35.163(a).

43. The Defendants have failed to provide signage at all inaccessible entrances to each of its facilities directing users to an accessible entrance or to a location at which they can obtain information about accessibility facilities using the international symbol of accessibility required by 28 C.F.R. § 35.163(b).

44. Although the Defendants may have appointed a person responsible for compliance with the ADA, this person has many other duties, is not responsive, and has not been adequately trained in this area of the law.

45. Therefore, as alleged herein, the Defendants have failed to operate their services programs so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities such as Plaintiffs.

## **COUNT II - New Construction and Alterations**

46. Plaintiffs reallege the foregoing as if fully set forth herein.

47. Although the Defendants have altered streets, roads, pedestrian walkways, and highways, the Defendants have failed to provide curb ramps at intersections required by 28 C.F.R. § 35.151(e).

48. Since the enactment of the ADA on January 26, 1992, the Defendants have either constructed new facilities or altered facilities in a manner that affects or could affect the usability of each facility or part altered thereof.

49. The Defendants have renovated certain Defendants' facilities since January 26, 1992.

50. In order to promote independence, the spirit of the ADA requires the Defendants, to the maximum extent feasible, to provide disabled individuals such as Plaintiffs the same enjoyment of Defendants programs.

51. The altered portion of these buildings is not readily accessible to and usable by individuals with disabilities.

52. Many of the needed changes are required even under the less strict "readily achievable" standard of Title III, to wit;

    A. The Defendants failed to install accessible interior door hardware;
    B. The Defendants failed to relocate water fountains or provide a water cup dispenser;
    C. The Defendants failed to install a full-length mirror;
    D. The Defendants failed to install insulated plumbing;
    E. The Defendants failed to purchase compliant tables.

53. Many of the changes above are small.

54. Consequently, many disabled individuals have chosen to disregard the "inconvenience" caused by small acts of discrimination.

55. Small acts of discrimination, however, add up to an egregious violation of the ADA; deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; and do not afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is equal to that afforded others in violation of 28 C.F.R. § 35.130.

56. Further, as alleged above, the burden should not be on disabled individuals to complain about these small acts of discrimination; rather, the Defendants should be required to do a proper self-evaluation in order to eliminate these small acts of discrimination.

57. Lack of notice and lack of an opportunity to be heard required by 28 C.F.R. § 35.106 have contributed to the Defendants' malfeasance.

58. Although the Defendants have addressed and resolved some disabled individual's concerns in the past, the lack of proper self-evaluation, transition plan, and formal grievance procedure impermissibly shifts the burden from the Defendants to those who can least afford it - the disabled citizens of Arkansas.

59. The Defendants have failed to assure that each facility or part of a facility altered by, on behalf of, for the use of the Defendants in a manner that affects or could affect the usability of the facility or part of the facility was, to the maximum extent feasible, altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities such as Plaintiffs in violation of 28 C.F.R. § 35.151.

**COUNT III - Failure to Make Reasonable Modifications in Policies and Procedures**

60. Plaintiffs reallege the foregoing as if fully set forth herein.

Thus, Defendants discriminate against Plaintiffs

63. Although it is within the Defendants' power, the Defendants have failed to enact or enforce ordinances that prohibit obstructions of sidewalks.

64. The disabled use sidewalks to travel safely from place to place.

65. Once a sidewalk is obstructed, the disabled are often forced to venture into the street, thereby risking life and limb.

66. The Defendants have in place all the needed mechanisms required to enforce prospective or existing ordinances, and consequently, only slight modifications are needed.

67. The Defendants have failed to enforce these ordinances, and this failure constitutes a deprivation of Defendants' services and benefits in violation of the ADA.

68. As the Defendants use similar mechanisms to protect the interests of business owners downtown regarding parking and other access issues, the Defendants' failure to address and protect the interests of the disabled constitutes a policy of discrimination or otherwise limits a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service in violation of 28 C.F.R. § 35.130.

## COUNT III

69. Defendant refused to comply with the FOIA request made on behalf of the Plaintiff.

## JURY DEMAND

69. Plaintiff prays for a trial by jury.

## RELIEF

**WHEREFORE**, Plaintiffs, **PETE EDWARDS**, on behalf of themselves, and all others similarly situated, pray that this Court certify both a Plaintiff and Defendant class; that this Court enter Declaratory Judgment finding the Defendants to be in violation of the ADA and Section 504; that this Court order the Defendants to undergo a proper self-evaluation of structures, policies, and procedures upon notice and hearing; that this Court order the Defendants to develop, implement, and complete a proper transition plan within a reasonable time in accordance with the ADA, the regulations promulgated thereunder, and Section 504, notwithstanding the untimeliness of same; that this Court order the Defendants to develop, implement, and complete a schedule for curb ramps within a reasonable time, notwithstanding the untimeliness of same; that this Court order the Defendants to provide program access, make those changes required under federal law at the Defendants' facilities; that this Court order the Defendants to either provide accessible parking meters or reserved on-street parking; for an Order requiring the Defendant to comply with the FOIA; that this Court award Plaintiffs a reasonable attorneys' fee, their costs expended hereunder, and for all other proper relief.

Respectfully submitted,

**SUTTER & GILLHAM, P.L.L.C.**
Attorneys at Law
1501 N. Pierce St. Suite 105
Little Rock, AR 72207
501-315-1910  Office
501-315-1916  Facsimile
*Attorney for Plaintiffs*

By:   /s/ Luther Oneal Sutter
Luther Oneal Sutter, ARBN #95031
luther.sutterlaw@gmail.com
Lucien R. Gillham, ARBN #99199
Lucien.gillham@gmail.com